UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| HARBOR WATCH DEVELOPMENT, LLC, a Michigan limited liability company, | Case No. 1:09-cv-670 |
| Plaintiff, | |
| | HONORABLE PAUL L. MALONEY |
| v. | |
| SUMMIT FINANCIAL & INVESTMENT GROUP, LLC, a Utah limited liability company, J. KIM POWELL a/k/a KIM J. POWELL, a Utah resident, and BRYAN PATRICE, a New York resident, | |
| Defendants. | |

# OPINION and ORDER

**Granting the Defendants' Rule 12(b) Motion to Dismiss the Complaint Without Prejudice; Terminating and Closing the Case**

Plaintiff Harbor Watch Development, LLC ("Harbor Watch") brings this diversity[1] action against defendants Summit Financial & Investment Group, LLC ("Summit"), J. Kim Powell ("Powell"), and Bryan Patrice ("Patrice"), asserting claims for breach of contract, unjust enrichment, fraud, constructive fraud, and breach of fiduciary duty. The claims arise out of Harbor Watch's

---

[1] The complaint alleges that plaintiff Harbor Watch is a Michigan corporation with its principal place of business in Michigan, while defendant Summit is a Utah corporation with its principal place of business in Utah, and defendants Powell and Patrice are residents of Utah and New York, respectively. *See* Comp ¶¶ 1-4. The complaint further alleges that more than $75,000 is at stake exclusive of interest, attorney fees and costs. *See* Comp ¶ 5. The defendants have not contested these jurisdictional statements, and the court assumes *arguendo* that they are true.

seeking assistance from the defendants to obtain financing for a real estate project in Petoskey, Michigan ("the project"). According to Harbor Watch, it entered into a binding written contract with Summit and Powell in July 2006 which obligated them to obtain or facilitate $12 million in commercial financing in return for "advance fees." *See* Comp ¶ 51 and Ex A (Development/Investment Loan Application).

The defendants correctly contend that section 14 of the contract, entitled "Governing Law; Exclusive Jurisdiction", obligates the parties to litigate these claims only in Utah. Section 14 provides, in its entirety:

> This application shall be under the exclusive jurisdiction of and governed by the laws of the State of Utah. Applicant hereby irrevocably submits to the exclusive jurisdiction of the courts in the State of Utah for any action arising out of or related to this Application; and Applicant hereby waives any and all defense that Applicant may have to the exercise of personal jurisdiction over them by any court located in the State of Utah. *No lawsuit or action regarding this Application shall be maintained in any state or jurisdiction outside of the State of Utah.*

MTD Ex A at 14 (emphasis added). As the defendants correctly note, all of Harbor Watch's claims clearly arise out of or are related to the Application. For example, Count 2, Constructive Fraud, reads as follows, in pertinent part:

> Plaintiff placed special trust and confidence in Defendants in all matters related to obtaining commercial financing for Plaintiff. Defendants willingly accepted this special trust and confidence, and a fiduciary relationship existed by and between the parties.
>
> Defendants have failed to honor the fiduciary relationship that formerly existed between the parties, and Defendants have unconscionably violated the special trust and confidence that had been reposed in them by Plaintiff. Specifically, Defendants Powell and [Summit] received, and never returned, substantial "advance fees" from Plaintiff with the understanding that Defendants would act in Plaintiff's best interest to secure financing.
>
> However, Defendants failed to act on Plaintiff's behalf and converted the money to [their] own benefit to the detriment of Plaintiff. Furthermore, Defendants

> communicated materially false and misleading information to Plaintiff and concealed material facts and information from Plaintiff.
>
> Defendants have engaged in constructive fraud, and their actions and inactions were willful, intentional, malicious, unjustified and without legal justification.

Comp ¶¶ 35-37. Next, Count Three, Breach of Fiduciary Duty, provides, in pertinent part:

> At the times referenced herein, Plaintiff placed special trust and confidence in Defendants in all matters related to obtaining its commercial financing. Defendants accepted this special trust and confidence, and a fiduciary relationship existed by and between the parties.
>
> Defendant Patrice failed to honor his fiduciary duty buy [sic] actively deceiving Plaintiff regarding his past relationships with Defendants Powell and [Summit,] and furthermore, not properly investigating them to determine if they were a legitimate source of financing.
>
> Defendants Powell and Summit have failed to honor the fiduciary relationship that formerly existed between the parties and have unconscionably violated the special trust and confidence that had been reposed in them by Plaintiffs. Specifically, Defendants Powell and [Summit] received substantial advance fees from Plaintiff. Though Defendants were to have used this money for the benefit of Plaintiff, defendants have wrongfully utilized this money for their own benefit and gain.
>
> To make matters worse, Defendants Powell and [Summit] failed to inform Plaintiff that the various financing schemes proposed to it had not worked in the past and that other clients had never received commercial financing nor had those clients received a refund of their "advance fees."
>
> Finally, Defendants Powell and [Summit] have failed to provide plaintiff with any accounting as to the receipt, management and use of plaintiff's substantial "advance fees."

Comp ¶¶ 42-44 (final two paragraph breaks added). Count Four is a claim for unjust enrichment, *see* Comp ¶¶ 45-49, while Count 5 (erroneously listed as Count 4 again), asserts a claim for Breach of Contract as follows:

> On or about July 31, 2006 plaintiff entered into a lawful and binding contract with Defendants Powell and [Summit] which provided among other things, [that] Defendants would obtain and/or facilitate commercial financing to Plaintiff in the amount of approximately Twelve Million Dollars ([$]12,000,000) or return "advance

fees" paid to Defendants.

Defendants Powell and [Summit] have unlawfully breached their contract with plaintiff, by, among other things:

a. Defendants failed to provide commercial financing to Plaintiff in any amount whatsoever, much less in the amount of Twelve Million Dollars ([$]12,000,000);

b. Defendants failed to act and conduct themselves in good faith, and, in this respect, Defendants failed to communicate truthful and accurate information to Plaintiff and further went about concealing material information and facts from Plaintiff; and

c. Defendants have failed and refused to return a substantial financial deposit to plaintiff.

Comp ¶¶ 51-52.

The contract itself expressly calls for application of Utah law and only Utah law. Under Utah law, the defendants are entitled to enforcement of the plain, unambiguous language of the contractual forum-selection clause. The "Utah courts give effect to a forum selection clause 'unless it is unfair or unreasonable." *C-A-R Leasing, Inc. v. Precise Pay, Inc.*, 2004 WL 2610445, *1 (Utah App. Nov. 18, 2004) (quoting *Coombs v. JuiceWorks Dev., Inc.*, 2003 UT App 388 ¶ 9, 81 P.2d 769, 772 (Utah App. 2003) (quoting *Prows v. Pinpoint Retail Sys.*, 868 P.2d 809, 812 (Utah 1993))). As the party who brings this action in violation of a forum-selection clause, Harbor Watch bears the burden of proof on this issue. *See C-A-R Leasing*, 2004 WL 2610445 at *1.

To overcome the forum-selection clause, Harbor Watch "'must demonstrate that the chosen state would be so seriously inconvenient a forum that to require the plaintiff to bring suit there would be unjust.'" *C-A-R Leasing*, 2004 WL 2610445 at *1 (quoting *Coombs*, 2003 UT App 388 at ¶ 9, 81 P.2d at 772). It is not enough for Harbor Watch simply to show that it would be less convenient or more costly for it to litigate in Utah than in its home state of Michigan. *See Coombs*,

81 P.3d at 775 n.5, 2003 UT App 388 at ¶ 9 ("Inconvenience to a party is an insufficient basis to defeat an otherwise enforceable forum selection clause.") (citation to 8th Circuit and internal quotation marks omitted) (although franchise was located in Utah, defendant-franchisors had significant presence in Utah, contract was not negotiated or executed in Arkansas, and plaintiff-franchisees had never been to Arkansas, court enforced clause requiring plaintiffs to sue in Arkansas).

As a matter of freedom of contract, the Utah Court of Appeals makes clear that there is nothing inherently unjust or against Utah public policy about allowing one party to a contract to negotiate a clause which gives it the benefit of the forum more convenient *for it* in the event of a dispute:

> "A primary reason for forum selection clauses is to protect a party . . . from having to litigate in distant forums all over the nation . . . . *Such provisions should be enforced when invoked by the party for whose benefit they are intended.*

*C-A-R Leasing*, 2004 WL 2610445 at *1 (quoting *Coombs*, 2003 UT App 388 at ¶ 15, 81 P.2d at 774) (emphasis added).

Utah courts would not jettison this strong presumption in favor of enforcing contractual forum-selection clauses merely upon evidence that litigating in Utah would be far more costly or inconvenient for Harbor Watch than litigating in Michigan. After all, if Harbor Watch did not wish to risk litigation in Utah in the event of a dispute, it could have insisted on a forum-selection clause mandating another forum, or at least on the inclusion of *no* forum-selection clause. *See Lee v. Frank's Garage & Used Cars, Inc.*, 2004 UT App 260 ¶ 14 n.6, 97 P.2d 717, 721 n.6 (Utah App. 2004) ("Dealer could have contracted for a non-Utah forum if it desired to avoid the potential of litigation in Utah."). Harbor Watch "do[es] not demonstrate why Defendants should not be entitled

to the benefit of [their] bargain which includes the forum selection clause." *Coombs*, 2003 UT App 388 at ¶ 15, 81 P.2d at 774 (citation and internal quotation marks omitted). The Utah appellate courts will not refuse to enforce a forum-selection clause unless the objecting party shows that "'trial in the contractual forum [Utah] will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'" *Prows v. Pinpoint Retail Sys.*, 868 P.2d 809, 812 (Utah 1993) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)); *accord Prime Ins. Syndicate, Inc. v. KD Cranes, Inc.*, 2007 WL 3088132, *1 (D. Utah Oct. 22, 2007) ("When based on inconvenience, a forum selection clause is unreasonable and therefore unenforceable only where enforcement would eliminate a party's remedy.") (citation omitted). Harbor Watch has not even seriously attempted to make such a showing.

The Utah Supreme Court's recent decision in *Innerlight, Inc. v. Matrix Group, LLC*, 2009 UT 31, 214 P.3d 854 (Utah 2009) is especially instructive. *Innerlight* further suggests that the Utah courts would emphatically reject Harbor Watch's premise that if the contract is arguably unenforceable due to fraud, the forum-selection clause cannot be enforced. Significantly for our purposes, the Utah Supreme Court construed an unqualified forum-selection clause to apply even where, as here, the party resisting application of the clause contended that the entire contract is void or unenforceable. The Utah Supreme Court wrote as follows:

> The district court erred in its denial of Martix's motion to dismiss and in its grant of Innerlight's motion for summary judgment when it held that the forum selection and choice of law provisions are not binding on the parties.
>
> When interpreting a contract, we begin by looking within the four corners of the contract "to determine the parties' intentions, which are controlling." *Bakowski v. Mountain States Steel, Inc.*, 2002 UT 2 ¶ 16, 52 P.2d 1179[, 1184 (Utah 2002)] (citations omitted). "If the language within the four corners of the contract is unambiguous, . . . a court determines the parties' intentions from the plain meaning of the contractual language as a matter of law." *Id.* Innerlight and Matrix entered

into an agreement that was negotiated and signed by both parties. *Id.* We find that there is no ambiguity in the relevant provisions of the Contract and therefore look to the plain meaning of the contractual terms to determine the parties' intent.

Innerlight argues, and the district court agreed, that the condition precedent in Section 2 of the Contract applies to the entire Contract. We disagree. Section two of the contract includes two paragraphs: paragraph (a) and paragraph (b). Paragraph (a) "appoints [Innerlight] as the exclusive distributor" of the Beverly Sassoon line of skin care products. Paragraph (b) then modifies paragraph (a) by conditioning Innerlight's acceptance *of this appointment* . . . upon [Innerlight's] written acceptance of [Martix's] Product Price List." (Emphasis added.)

Nothing in paragraph (b) indicates that the condition precedent applies to the entire agreement between the parties. Instead, the plain language states that the condition precedent in paragraph (b) applies to Innerlight's *appointment* as "exclusive distributor." If the parties intended the condition precedent in paragraph (b) to apply to the entire contract, they easily could have included language to that effect. We cannot conclude that the parties intended to condition the enforceability of the entire agreement on Innerlight's appointment as exclusive distributor when the plain language of the Contract indicates no such intent.

Our conclusion in this regard is buttressed by the language of Section 12 of the Contract, which contains no reference to the condition precedent found in paragraph (b) of Section 2, or to Innerlight's appointment as exclusive distributor. Rather, Section 12 plainly and unambiguously states as follows:

> This Agreement *shall* be construed and interpreted under the laws of the State of Florida and the parties agree that *any* action or proceeding brought *concerning this Agreement* may be brought *only* in the courts of Palm Beach County, Florida, and each party hereto hereby consents to the jurisdiction of such courts.

(Emphases added.) Pursuant to Section 12, any action concerning the contract, *including a declaratory action seeking a determination that the contract is unenforceable*, is governed by Florida law and may only be brought in Florida courts. Based on a plain reading of the language of the contract, the condition precedent in section 2(b) does not diminish the enforceability of the forum selection and choice of law provisions. * * *

*Innerlight*, 214 P.2d at 857-58, 2009 UT 31 at ¶¶ 15-16 (some paragraph breaks added) (emphasis added).

Finally, in Utah a party seeking to avoid enforcement of a forum-selection clause "might also

show that the courts of the chosen state 'would be closed to the suit or would not handle it effectively or fairly.'" *Prow*, 868 P.2d at 812 n.5 (quoting RESTATEMENT 2D OF CONFLICT OF LAWS § 80 comment c (Supp. 1988)). Harbor Watch has not even attempted to show that Utah's courts would for some reason be closed to these claims or would not adjudicate them effectively or fairly. Harbor Watch presents no reason to believe that it cannot get "its day in court" in the federal or state courts of Utah.

**Finally, the defendants contend that Section 13 of the contract entitles them to an award of attorneys' fees and costs because the forum-selection issue was decided adversely to Harbor Watch.** *See* MTD at 10 and Defs' Reply at 7. The court rejects the defendants' argument on this score. The District of Utah thoroughly addressed this very issue in *Beneficial Holdings, Inc. v. CVS Pharmacy, Inc.*, 2006 WL 288424 (D. Utah Feb. 7, 2006). After the court granted defendant CMI's motion to dismiss for improper venue due to a forum-selection clause contained in a sales-representative agreement, CMI moved for attorneys' fees pursuant to FED. R. CIV. P. 54 and Paragraph 23 of that same agreement. The court's sound reasoning applies equally here:

> CMI's motion must be denied because the forum selection clause of the [contract], which prevented the court from reaching the merits of the earlier dispute, applies with equal force to this Motion. Under the Forum Selection Clause, this court is not the proper forum to bring such a motion. Therefore, CMI's motion is denied.
>
> Further, CMI is judicially estopped from arguing that this Court is a proper forum to resolve the issue of attorneys' fees and costs when it has previously argued that this is an improper forum to hear the underlying dispute. * * *
>                                      * * *
> CMI has successfully persuaded the Court to accept its prior position that this is an improper forum. If the Court were now to accept CMI's new position, it would create the perception that the Court was either previously misled or is being misled now.
>
> Finally, CMI would have an unfair advantage if the Court were to accept its new position. If the Court were to allow CMI to proceed, it would have the effect of

permitting CMI to avoid the forum selection clause, while forcing [plaintiff] to abide
by it. It would also have the effect of undermining the forum selection clause and
the policy reasons which call for the enforcement of such provisions.

*Beneficial Holdings*, 2006 WL 288424 at *1 and *2. As the defendants themselves have so strenuously emphasized, the parties agreed to litigate *all* matters relating to the contract only in Utah courts, so the Section 13 attorney fee issue can be addressed only by a court within that State.

## ORDER

Defendants' corrected motion to dismiss the complaint [doc. #8] is **GRANTED**.

Pursuant to FED. R. CIV. P. 12(b)(3) and FED. R. CIV. P. 12(b)(6), the complaint is **DISMISSED** without prejudice due to enforcement of the contractual forum-selection clause.

The case is **TERMINATED** and **CLOSED**.

This is a final order.

**IT IS SO ORDERED** on this  23rd  day of December 2009.

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge